# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| FACTORY MUTUAL INSURANCE CO., | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| PIKE CO., INC., | : |
| | : |
| Defendant and Third-Party Plaintiff, | : |
| | : |
| v. | :    No.  3:08cv1775 (MRK) |
| | : |
| YANKEE HERITAGE, INC.; SOUTH CENTRAL CONNECTICUT REGIONAL WATER AUTHORITY, | : |
| | : |
| | : |
| | : |
| Third-Party Defendants. | : |
| | : |
| SOUTH CENTRAL CONNECTICUT REGIONAL WATER AUTHORITY, | : |
| | : |
| Cross-Claimant | : |
| | : |
| v. | : |
| | : |
| YANKEE HERITAGE, INC., | : |
| | : |
| Cross-Defendant. | : |

## RULING AND ORDER

This case concerns a water main break that flooded the Buley Library on the campus of

Southern Connecticut State University in New Haven, Connecticut on November 21, 2006.

Along with a companion case, *Pike Co. v. South Central Connecticut Regional Water Authority*,

No. 08cv1751 (MRK) (D. Conn. filed Nov. 19, 2008), the case involves four parties[1] who have brought virtually every conceivable combination of direct claims, counterclaims, cross-claims, and third-party claims against one another. The Court wishes to express its sincere appreciation for the diligent efforts of counsel in their case management, in their briefs, during telephonic conferences, and at oral argument to help the Court keep track of the various parties, claims, and issues in this case and the companion case.

This Ruling and Order resolves four of the six pending motions in this case:[2] Pike Co., Inc.'s ("Pike's") Motion to Exclude the Report and Testimony of Gregory Twomey [doc. # 89] pursuant to Rule 702 of the *Federal Rules of Evidence*; the South Central Connecticut Regional Water Authority's ("the Water Authority's") Motion for Summary Judgment [doc. # 90] pursuant to Rule 56 of the *Federal Rules of Civil Procedure*; Yankee Heritage, Inc.'s ("Yankee Heritage's") Motion for Summary Judgment [doc. # 124]; and Yankee Heritage's Motion to Exclude the Report and Testimony of Gregory Twomey [doc. # 127]. For the reasons set forth below, the Court DENIES without prejudice Pike's Motion to Exclude the Report and Testimony of Gregory Twomey [doc. # 89]; DENIES the Water Authority's Motion for Summary Judgment [doc. # 90]; GRANTS Yankee Heritage's Motion for Summary Judgment [doc. # 124]; and DENIES without prejudice Yankee Heritage's Motion to Exclude the Report and Testimony of Gregory Twomey [doc. # 127].

---

[1] All claims brought by or against a fifth party, Ferguson Mechanical Co., Inc. ("Ferguson Mechanical"), have now been settled. Thus, Ferguson Mechanical has already been dismissed from the case. *See* Order [doc. # 107].

[2] The Court previously denied both Ferguson Mechanical's Motion for Summary Judgment [doc. # 86] and Ferguson Mechanical's Amended Motion for Summary Judgment [doc. # 98] as moot. *See* Order [doc. # 108]. Pike's Motion to Preclude the Report and Testimony of Kevin Flood [doc. # 87] and Pike's Motion to Preclude the Report and Testimony of John C. Parrienello [doc. # 88] will remain pending after this Ruling and Order.

# I.

Pike and Yankee Heritage suggested to the Court before the oral argument held on March 2, 2011 that their motions to exclude Mr. Twomey's testimony were dispositive motions aimed at excluding an expert witness whose testimony would be necessary for Factory Mutual Insurance Co. ("Factory Mutual") to prevail on its subrogation claims against Pike, and in turn, for Pike and the Water Authority to be able to prevail on their common law indemnification claims against Yankee Heritage. The Court does not agree with that suggestion.

Factory Mutual did not disclose Mr. Twomey as an expert witness; did not submit an expert report by Mr. Twomey; and represented at oral argument that it will not seek to have Mr. Twomey qualified as an expert pursuant to Rule 702 of the *Federal Rules of Evidence* and the *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), line of cases. Instead, Mr. Twomey is a fact witness who will testify about his personal role as the insurance adjuster at Factory Mutual who analyzed the extent of the damages caused by the flood at issue in this case. In addition, the two motions cannot properly be characterized as dispositive motions because even assuming that Mr. Twomey is the witness who will testify as to the damages Factory Mutual suffered as a result of the flood, Pike and Yankee Heritage only object to a few portions of Mr. Twomey's anticipated testimony. Thus, even if the Court were to grant both motions, Mr. Twomey would still be able to testify and Factory Mutual could still be able to prevail on its subrogation claims against Pike – though Factory Mutual might not be able to prove the full amount of the damages it hopes to recover.

The Court will not exclude Mr. Twomey from this trial. While Pike raises a host of creative arguments about why the Court should exclude various portions of Mr. Twomey's anticipated testimony, it does not cite a single case that supports its sweeping argument that

under the *Federal Rules of Evidence*, an insurance adjuster for a plaintiff insurance company bringing a subrogation claim cannot testify about his adjustment of the claim at issue in the case. The Court knows of no reason why such testimony would be *per se* inadmissible under the *Federal Rules of Evidence. See St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 246 F.R.D. 56, 58 (D.D.C. 2007) (permitting an insurance adjustor's testimony in subrogation action). *Cf. Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995) (permitting a company president to testify as to his lay opinion regarding the damages his company suffered).

That said, there may well be specific aspects of Mr. Twomey's anticipated testimony – or of documents written by Mr. Twomey that Factual Mutual intends to submit into evidence – that are inadmissible for one reason or another. *See, e.g.*, Fed. R. Evid. 402 (irrelevance); Fed. R. Evid. 602 (lack of personal knowledge); Fed. R. Evid. 802 (hearsay). For example, if Mr. Twomey intends to merely repeat to a jury what various experts retained by Factory Mutual told him about the value of the art and library books that were damaged in the flood, such testimony may very well be inadmissible. *Cf. Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*, No. 3:09cv1546, 2010 WL 1553784, at *2 (D. Conn. Apr. 19, 2010) (recognizing that even an expert witness may not be used to relay otherwise inadmissible hearsay evidence in the guise of the expert's opinion). The Court therefore DENIES Pike's Motion to Exclude the Report and Testimony of Gregory Twomey [doc. # 89] and Yankee Heritage's Motion to Exclude the Report and Testimony of Gregory Twomey [doc. # 127], but without prejudice to Pike's and Yankee Heritage's ability to raise specific objections at trial.

## II.

Because this case is currently before the Court at the summary judgment stage, the Court sets forth the facts in the light most favorable to the nonmoving parties. *See, e.g.*, *DeFabio v. E.*

*Hampton Union Free Sch. Dist.*, 623 F.3d 71, 74 (2d Cir. 2010) (per curiam). Here, the Water Authority has moved for summary judgment on Pike's common law indemnification claim against it, and Yankee Heritage has moved for summary judgment on the Water Authority's common law indemnification claim against it. Thus, as to the Water Authority's motion, the Court must set forth the facts in the light most favorable to Pike, and as to Yankee Heritage's motion, the Court must set forth the facts in the light most favorable to the Water Authority. Unless the Court notes otherwise, the facts set forth here are undisputed.

On February 21, 2005, Pike entered into a contract with the Connecticut Department of Public Works ("the Public Works Department") to renovate and build an addition to the Buley Library on the campus of Southern Connecticut State University. Pike, in turn, subcontracted some of its work on the library project to Yankee Heritage and to Ferguson Mechanical Co., Inc. ("Ferguson Mechanical"). Yankee Heritage was responsible for excavation, and Ferguson Mechanical was responsible for utility drilling. Bob Ross of Pike, the Project Superintendent, oversaw the library project on the ground. The Public Works Department also hired another company, Fusco Corp. ("Fusco"), to serve as its Construction Administrator. Dave Long of Fusco was the Project Manager assigned to the library project.

At roughly the same time that Pike, Yankee Heritage, and Ferguson Mechanical agreed to work on the library project, the Water Authority entered into a separate contract with the Public Works Department to design and install a new water main for the Buley Library. A new water main was needed because the old water main was buried in the area where the library addition was going to be built. In June of 2005, Mr. Ross of Pike, accompanied by representatives from the Water Authority, walked the library project area and staked out the location where the new water main should be located. The Water Authority then proceeded to install a new water main

and finished installing it in June 2005. The Water Authority apparently did not keep written records about the plan for the new water main, and the Water Authority installed it without any knowledge regarding whether other underground utilities would be installed in the same area as the new water main. In addition, the Water Authority apparently did not keep written records about any tests that it performed on the new water main subsequent to installing it.

Meanwhile, construction on the library project continued after the Water Authority installed the new water main. On November 16, 2006, Yankee Heritage began to excavate a trench parallel to the new water main, which was intended for a new high-temperature water line. In the process of digging the trench, Yankee Heritage partially exposed the new water main. On November 21, 2006, the new water main released, flooding the parallel trench and sending millions of gallons of water into the library's basement. As a result, the library was significantly damaged, and Pike was unable to resume its work on the library project until March 3, 2007. Factory Mutual, which insured the State of Connecticut against property damage, eventually paid the State of Connecticut $6,034,463.35 for damages caused by the flood.

On November 19, 2008, Pike filed a complaint in this Court against the Water Authority, asserting a single claim of negligence and alleging that the flood resulted from the Water Authority's failure to install the new water main in accordance with the standards of care and workmanship set forth in the National Fire Protection Agency ("NFPA") Code, failure to utilize any restraints in building the new water main, and failure to properly test the new water main after installing it. *See* Complaint, *Pike Co. v. South Central Connecticut Regional Water Authority*, No. 08cv1751 (MRK) (D. Conn. Nov. 19, 2008), ECF No. 1. On November 21, 2008, Factory Mutual filed its Complaint [doc. # 1] in this case against Pike. Factual Mutual asserted subrogation claims against Pike for breach of contract and negligence, alleging that the flood

resulted from Pike's or Pike's subcontractors' failures to take proper precautions while engaged in construction work around the new water main. *See* Compl. [doc. # 1].

The procedural history of this case since the filing of the two complaints is complicated, to say the least. Rather than reciting that complicated history in full, the Court instead lists the claims that remain pending in the two cases. In the companion case, *Pike Co. v. South Central Connecticut Regional Water Authority*, No. 08cv1751 (MRK) (D. Conn. filed Nov. 19, 2008), Pike asserts a negligence claim against the Water Authority and a breach of contract claim against Yankee Heritage; and the Water Authority asserts a contribution claim and a common law indemnification claim against Yankee Heritage. In this case, Factory Mutual asserts subrogation claims against Pike for breach of contract and negligence, *see* Factory Mutual's Am. Compl. [doc. # 52]; Pike asserts common law indemnification claims against Yankee Heritage and the Water Authority, *see* Pike's Third-Party Compl. [doc. # 17], and a counterclaim against Factory Mutual, *see* Pike's Answer and Countercl. [doc. # 53];[3] and the Water Authority asserts a common law indemnification claim against Yankee Heritage, *see* Cross-cl. [doc. # 24].

On September 30, 2010, the Water Authority moved for summary judgment on Pike's common law indemnification claim against it in this case. *See* Water Authority's Mot. for Summary J. [doc. # 90]. Also on September 30, 2010, Yankee Heritage filed a motion in the companion case seeking summary judgment on the Water Authority's common law indemnification claims against it in both cases. *See* Yankee Heritage's Motion for Summary Judgment, *Pike Co. v. South Central Connecticut Regional Water Authority*, No. 08cv1751 (MRK) (D. Conn. Sept. 30, 2010), ECF No. 100. However, Yankee Heritage initially overlooked

---

[3] Although the legal basis for Pike's counterclaim against Factory Mutual is not entirely clear to the Court, Factory Mutual has not yet contested that counterclaim and the Court need not address it in this Ruling and Order.

the need to file its motion in this case as well. After the Court informed Yankee Heritage of its error, *see* Order [doc. # 123], Yankee Heritage filed a copy of the same motion in this case on March 16, 2011. *See* Yankee Heritage's Mot. for Summary J. [doc. # 124].

The Court held oral argument on the various motions pending in this case and the companion case on March 3, 2011. At the oral argument, the Court asked the parties to submit supplemental briefing on one issue relevant to Yankee Heritage's Motion for Summary Judgment in this case.[4] The Court asked the parties to brief whether, assuming that a jury was to find the Water Authority liable to Pike on its common law indemnification claim – the only claim Pike asserts against the Water Authority in this case – it could also find Yankee Heritage liable to the Water Authority for common law indemnification. The Court is especially grateful to counsel for the Water Authority and Yankee Heritage for submitting helpful supplemental briefs on that issue.

### III.

This Court must apply a familiar standard when resolving a motion for summary judgment. Summary judgment is appropriate only when the "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" submitted to the Court "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(1)(A); Fed. R. Civ. P. 56(a). "As to materiality, the substantive law governing the case will identify those facts that are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment must

---

[4] The Court also asked for briefing on another issue that, while relevant to a motion pending in the companion case, has no impact on any of the pending motions in this case.

be rejected "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). However, the party against whom summary judgment is sought cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts," and instead "must come forward with specific facts showing that there is a *genuine issue* for trial." *Matshushita v. Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986) (quotation marks and citations omitted).

## IV.

### A.

The Court begins with the Water Authority's Motion for Summary Judgment. The Water Authority seeks summary judgment on Pike's common law indemnification claim, the only claim pending against it in this case. Under Connecticut Law, a claim for common law indemnity is "a claim for reimbursement in full from one on whom a primary liability is claimed to rest . . . ." *Crotta v. Home Depot, Inc.*, 249 Conn. 634, 641-42 (1999) (citation omitted). The doctrine of common law indemnity distinguishes between active or primary negligence and passive or secondary negligence, shifting the impact of liability from a passive or secondary joint tortfeasor to the active of primary joint tortfeasor. *See id.* (citation omitted). Thus, Pike seeks to pass the full extent of its liability on to the Water Authority in the event that a jury eventually finds Pike liable to Factory Mutual on its subrogation claims. *See, e.g.*, *Finance California, Inc. v. Lawyers Title Insurance Corp.*, No. 3:07cv804 (MRK), 2010 WL 2982986, at *4 (D. Conn. June 22, 2010) (denying summary judgment on a common law indemnification claim).

Under Connecticut law, a party asserting a common law indemnification claim against a joint tortfeasor must prove four elements in order to prevail on that claim. *See Skuzinski v.*

*Bouchard Fuels, Inc.*, 240 Conn. 694, 698 (1997). First, the party asserting the claim must show that the joint tortfeasor was negligent. *See id.* Second, the party asserting the claim must show that the joint tortfeasor's negligence, rather than its own negligence, was the direct, immediate cause of the accident and injuries at issue. *See id.* Third, the party asserting the claim must show that the joint tortfeasor had exclusive control over the dangerous situation giving rise to the accident and injuries, to the exclusion of the party asserting the claim. *See id.* at 698, 706. Fourth, the party asserting the claim must show that it did not know of the joint tortfeasor's negligence; had no reason to anticipate the joint tortfeasor's negligence; and could reasonably rely on the joint tortfeasor not to be negligent. *See id.* at 698.

The Water Authority does not contest that the evidence in the summary judgment record would permit a reasonable jury to find that Pike satisfied the first, second, or fourth elements of its common law indemnification claim. The Water Authority's only argument in support of summary judgment is that, based on the summary judgment record, no reasonable jury could find that the Water Authority had exclusive control over the dangerous situation at issue in this case. *See* Water Authority's Mem. in Supp. of Mot. Summary J. [doc. # 90-1] at 7-12. The Water Authority relies on just one Connecticut Supreme Court case, *Skuzinksi v. Bouchard Fuels, Inc.*, 240 Conn. at 694, for the proposition that under the circumstances of this case, the Court can decide the exclusive control issue as a matter of law instead of submitting it to a jury.

In *Skuzinski*, the plaintiff walked out of a liquor store where he had just purchased liquor, entered the street, and was immediate hit by a truck. *See id.* at 696. When the plaintiff sued the truck driver for negligence, the truck driver in turn asserted a common law indemnification claim against the liquor store owner. *See id.* The truck driver alleged that the store owner had exclusive control over the dangerous situation that gave rise to the accident in that the store owner had

failed to clear snow from the sidewalk in front of the store. *See id.* As a result, the truck driver argued, the plaintiff had no choice but to walk in the street rather than on the sidewalk. *See id.* The trial court granted the store owner's motion to strike the truck driver's common law indemnification claim. *See id.* at 698. The Connecticut Supreme Court affirmed on the ground that based on the facts that the truck driver alleged in support of his common law indemnification claim, no reasonable jury could have concluded that the store owner had exclusive control of the dangerous situation that gave rise to the accident. *See id.* at 705. The Connecticut Supreme Court reasoned that "[i]n this case, the question of exclusive control is one of the *rare* examples in which the issue may properly be decided as a matter of law," because it was readily apparent that the dangerous situation did not solely consist of the uncleared sidewalk. *Id.* (emphasis added).

The Court believes that the Water Authority's reliance on *Skuzinski* is misplaced. This case does not present one of those "rare examples" of a situation that, as a matter of law, cannot be said to be in the exclusive control of any one party. Connecticut courts decline to decide the exclusive control issue as a matter of law when there is a genuine factual dispute about what the dangerous situation that gave rise to a particular injury was. *See, e.g.*, *Viadella v. Yankee Remodeler of New London, Inc.*, No. CV085008382, 2010 WL 1544626, at *3 (Conn. Super. Mar. 19, 2010) ("Because the court currently cannot define 'the dangerous situation' that gave rise to the plaintiff's slip and fall, it also cannot determine whether any reasonable juror would find that the third party defendant had exclusive control of the situation at issue. Exclusive control in the present case is therefore a question of fact . . . ."). There is evidence in the record that supports Pike's allegation that the Water Authority designed and installed the water main without first seeking input from any other entity about the construction plans. *See* Corradino Dep. [doc. # 104-2] at 78. There is also evidence in the record – in particular, the testimony of

Pike's expert witness Tom Simbro – that supports Pike's allegation that the Water Authority installed the water main without industry-standard restraints that should have prevent the exposed water main from opening. *See* Simbro Dep. [doc. # 104-3] at 70-73. Based on that evidence, a jury might reasonably conclude – but just as well might not conclude – that the faulty water main was the dangerous situation that gave rise to the flood. If a jury were to reach that reasonable conclusion, it could also presumably conclude that the Water Authority exclusively created and controlled that dangerous situation. The Court therefore DENIES the Water Authority's Motion for Summary Judgment.

**B.**

The Court now turns to Yankee Heritage's Motion for Summary Judgment. Yankee Heritage seeks summary judgment on the common law indemnification claim asserted against it by the Water Authority. As discussed above, a common law indemnification claim permits a party to pass the full extent of its liability on to a joint tortfeasor under certain limited circumstances. *See Crotta*, 249 Conn. at 641-42. Thus, the Water Authority seeks to pass the full extent of its liability on to Yankee Heritage in the event that a jury eventually finds the Water Authority liable to Pike. *See, e.g.*, *Finance California,* 2010 WL 2982986, at *4.

As the Court discussed with the parties at oral argument and emphasized by asking the parties to submit supplemental briefing after the oral argument, the problem with the Water Authority's common law indemnification claim is not a lack of evidence in the record. Instead, the problem lies in the fact that the Water Authority seeks to obtain indemnification from Yankee Heritage.

The only claim on which the Water Authority could potentially be found liable in this case is a Pike's common law indemnification claim. Thus, the Water Authority will not have any

liability to pass on unless a jury finds that the Water Authority was negligent; that the Water Authority's was the direct, immediate cause of the accident and injuries at issue; that the Water Authority had exclusive control over the dangerous situation giving rise to the accident and injuries at issue; and that the Water Authority's negligence was unforeseeable. *See id.* Assuming that a jury were to find that the Water Authority was the direct, immediate cause of the flood – and furthermore, that the Water Authority had exclusive control over the situation that gave rise to the flood – it would be not only unreasonable, but utterly irrational for the same jury to go on to find that *Yankee Heritage* was the direct, immediate cause of the flood and that the *Yankee Heritage* had exclusive control over the situation that gave rise to the flood. The very factual findings that would make the Water Authority liable to Pike would be logically incompatible with the factual findings that would be necessary for the Water Authority to prevail on its claim against Yankee Heritage.

The Court therefore GRANTS Yankee Heritage's Motion for Summary Judgment [doc. # 124]. In the event that a jury eventually finds the Water Authority liable to Pike on its common law indemnification claim, the Water Authority will not be able to pass that liability on to Yankee Heritage. That said, Water Authority has good arguments for why it should not be liable to Pike, and if the jury accepts those argument, there will be no liability for the Water Authority to pass on.

**V.**

In sum, the Court concludes that Mr. Twomey's testimony is not *per se* inadmissible; that there is a genuine issue of material fact regarding whether the Water Authority was in exclusive control of the situation that gave rise to the flood at issue in this case; but that no reasonable jury could find Yankee Heritage liable to the Water Authority for common law indemnification. The

Court DENIES without prejudice Pike's Motion to Exclude the Report and Testimony of Gregory Twomey [doc. # 89]; DENIES the Water Authority's Motion for Summary Judgment [doc. # 90]; GRANTS Yankee Heritage's Motion for Summary Judgment [doc. # 124]; and DENIES without prejudice Yankee Heritage's Motion to Exclude the Report and Testimony of Gregory Twomey [doc. # 127].

As a result of this Ruling and Order, the only claims that remain pending in this case are Factory Mutual's subrogation claims against Pike for breach of contract and negligence; Pike's counterclaim against Factory Mutual; Pike's common law indemnification claim against Yankee Heritage; and Pike's common law indemnification claim against the Water Authority. The Court will shortly issue a separate order consolidating this case and the companion case for trial.

IT IS SO ORDERED.

/s/ _____Mark R. Kravitz_____
United States District Judge

**Dated at New Haven, Connecticut: April 18, 2011.**